615 N.W.2d 511 (2000)
2000 ND 161
In the Interest of S.F., J.F., and H.F., Children.
Charles R. Sheeley, Sargent County Juvenile Supervisor, Petitioner and Appellee, and
North Dakota Department of Human Services, Intervenor,
v.
S.F., J.F., H.F, Children, and M.F., parent of said children, Respondents, and
A.F., parent of said children, Respondent and Appellant, and
Wendy Jacobson, Director of the Sargent County Social Service Board, Respondent and Appellee.
No. 20000024.
Supreme Court of North Dakota.
August 18, 2000.
Rehearing Denied September 18, 2000.
*512 Lyle R. Bopp, State's Attorney, Forman, N.D., for petitioner and appellee Charles R. Sheeley and respondent and appellee Wendy Jacobson.
Mark A. Meyer, Meyer Law Firm, Wahpeton, N.D., for respondent and appellant.
MARING, Justice.
[¶ 1] A.F. appealed orders terminating his parental rights with respect to S.F., J.F., and H.F.[1] We conclude there is clear and convincing evidence warranting termination of A.F.'s parental rights, and we affirm.
[¶ 2] A.F. and M.F., the father and mother, of S.F., J.F., and H.F., were divorced in 1997.[2] The mother was awarded custody of the children, and the father was awarded visitation. The parents were ordered to attend various programs and the father was ordered to obtain a chemical dependency evaluation and follow resulting recommendations.
[¶ 3] On February 10, 1998, Charles R. Sheeley, Sargent County Juvenile Supervisor, petitioned for an order of disposition, alleging the children were deprived. On February 23, 1998, the parents voluntarily placed the children with A.F.'s brother and his wife, with whom the children continue to live.
[¶ 4] On March 5, 1998, the parents stipulated the children were deprived, and:
2. That the parents of said children shall involve themselves in any type of counseling programs as previously Ordered by the District Court or upon the recommendations of any counselor(s) or any social workers having an interest in said matter;
3. That visitation between said children and their parents shall be arranged by and through the Sargent County Social Service Department with the understanding that said visitations may become unsupervised at such a time deemed appropriate by any counselor(s) or social workers having an interest in said matter;
4. That the parents of said children shall follow any and all Orders previously imposed by Judge Ronald E. Goodman....
On March 15, 1998, the juvenile court incorporated the parents' stipulation in an order.
[¶ 5] On August 7, 1998, Sheeley petitioned for termination of the parents' parental rights with respect to the children. After a hearing on December 7, 1998, the juvenile court issued a December 17, 1998, order terminating the parents' parental rights. The juvenile court found the children were deprived, and further found:

VIII.
That by clear and convincing evidence the conditions and causes of the deprivation of said children are likely to continue and will not be remedied, and that by reason thereof said children are suffering *513 and in the future will probably suffer serious physical, mental, moral, or emotional harm;

IX.
That Sargent County Social Services and their designee's [sic] have made all reasonable efforts to provide necessary services to both parents in order that the children may return to their care but [A.F.] has substantially and willfully failed or refused to utilize said services without justifiable excuse;

X.
That the prognostic evidence provided at the hearing held on the 7th day of December, 1998, provided by Dr. Richard Geiselhart, MeritCare Clinic, Wahpeton, North Dakota, indicates by clear and convincing evidence, that the provision of any programs or services for [A.F.] will probably not lead, in any reasonable time, to [A.F.] being able to provide the minimum parental care necessary for him to satisfy minimum community standards; moreover, the evidence at said hearing shows, by clear and convincing evidence [ ] that [A.F.] is unwilling or has failed without justifiable excuse to even substantially engage in programs and services provided to him and which are absolutely necessary for him to be able to be a responsible parent pursuant to minimum requirements required by law....
[¶ 6] On February 3, 1999, the juvenile court granted A.F.'s motion to reopen the case for presentation of additional evidence. A second hearing was held on March 5, 1999. Pursuant to agreement of the parties, the juvenile court issued a judgment deferring a decision for six months, upon the following conditions:
1. The respondent, [A.F.], would immediately obtain a chemical dependency evaluation within forty-five days of March 5, 1999 and complete and do all things necessary as recommend[ed] by the chemical dependency evaluator....
2. The respondent shall obtain an anger management evaluation .... and the respondent shall abide by each of the recommendations made by such evaluator.
[¶ 7] After another hearing on November 22, 1999, the juvenile court made the following finding of fact on December 6, 1999:

VI.
That said children continue to be without proper parental care or control, or subsistence, education required by law, or other control necessary for the physical, mental, and emotional health, or morals, as follows:
1. That evidence provided at the hearing held on the 22nd day of November, 1999, indicates by clear and convincing evidence, that the Respondent [A.F.], is unwilling or has failed without justifiable excuse to substantially engage in programs and services provided to him and agreed upon by him and are necessary for him to provide the minimum parental care necessary for him to satisfy community standards or pursuant to minimum requirements required by law, to wit:
a. That the Respondent [A.F.], failed to follow recommendations set forth by the Hope Unit, Breckenridge, Minnesota, specifically designed for his anger management and chemical dependency issues and his case was closed due to his non-compliance.
The court further found the children were deprived, "the conditions and causes of the deprivation ... are likely to continue and will not be remedied," and the "children are suffering or in the future will probably suffer serious physical, mental, moral, or emotional harm if returned to the parents."
*514 [¶ 8] The juvenile court ordered A.F.'s parental rights terminated with respect to the children, and A.F. appealed the December 17, 1998, order and the December 6, 1999, order. A.F. contends the State failed to prove, by clear and convincing evidence, that his parental rights should be terminated, arguing, 1) "The state has failed to prove that the children are deprived," and 2) "The state has failed to show that the conditions and causes of the deprivation are likely to continue or will not be remedied."
[¶ 9] On appeal, we review a juvenile court's decision to terminate parental rights in a manner similar to trial de novo, giving deference to the juvenile court's decision, because that court had the opportunity to observe the candor and demeanor of the witnesses. In re A.S., 1998 ND 181, ¶ 13, 584 N.W.2d 853. "Because evidence of past deprivation alone is not enough, prognostic evidence is evaluated to determine continued or future deprivation." Id. at ¶ 19.
[¶ 10] "Section 27-20-44(1)(b), N.D.C.C. (1969), creates a three-part test for terminating parental rights: 1) Is the child deprived? 2) Are the conditions and causes of the deprivation likely to continue? 3) Is the child suffering, or will the child in the future probably suffer serious physical, mental, moral, or emotional harm?" In re A.M., 1999 ND 195, ¶ 7, 601 N.W.2d 253. To terminate parental rights, the State must prove all three parts by clear and convincing evidence. Id. "While we are not bound by the juvenile court's findings, we give them appreciable weight." Id. "Prognostic evidence forming the basis for a reasonable prediction about future behavior may be considered in determining if deprivation is likely to continue." Id. In determining the likelihood of continuing deprivation, a court may consider parental cooperation with social-service agencies. McBeth v. J.J.H., 343 N.W.2d 355, 360 (N.D.1984). While lack of parental cooperation is insufficient by itself to establish deprivation, it is pertinent to the issue of whether deprivation will continue. In re A.M., 1999 ND 195, ¶ 7, 601 N.W.2d 253; In re R.M.B., 402 N.W.2d 912, 918 (N.D.1987).
[¶ 11] There is clear and convincing evidence A.F.'s children were deprived. A.F. agreed to, and had been ordered to, obtain a chemical dependency evaluation and comply with the chemical dependency evaluator's recommendations. A.F. agreed to, and was ordered to, obtain an anger management evaluation and abide by the anger management evaluator's recommendations. The juvenile court gave A.F. a number of opportunities to show an ability and willingness to be a responsible parent and avoid termination of his parental rights. Nevertheless, A.F. failed to complete the necessary chemical dependency and anger management evaluations and follow the recommendations of the evaluators. A.F.'s failure to take the steps he agreed to take, and was ordered to take, "demonstrates a serious indifference toward his responsibilities and obligations as a parent," In re C.R., 1999 ND 221, ¶ 10, 602 N.W.2d 520. We conclude there is clear and convincing evidence the conditions and causes of the children's deprivation are likely to continue.
[¶ 12] The orders terminating A.F.'s parental rights with respect to S.F., J.F., and H.F. are affirmed.
[¶ 13] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.
NOTES
[1] M.F., the mother of the children, has not appealed the order terminating her parental rights.
[2] The Honorable Ronald E. Goodman presided over the divorce proceeding.