Jensen, Justice.
 

 [¶1] A.E., the mother of A.L.E., appeals from a judgment terminating her parental
 
 *463
 
 rights. Because the juvenile court correctly applied the law, the record contains evidence to support the juvenile court's decision, and we are not left with a definite and firm conviction a mistake has been made, we affirm.
 

 I
 

 [¶2] A.E. and A.A. are the biological parents of A.L.E., who was born in September 2015. The record, in summary, reveals that A.E. has struggled with substance abuse before and after A.L.E.'s birth. Her substance abuse has resulted in multiple periods of incarceration. Her substance abuse has required, at the time of the hearing, that A.L.E. be in foster care and in the custody of Social Services for 707 days of the days since her birth in 2015. A.E.'s drug usage has also adversely affected A.L.E.'s health.
 

 [¶3] A.A. did not participate in the termination proceedings and has not appealed. A.E. has appealed and challenges the juvenile court's determination that A.L.E. is deprived and the determination that the causes of the deprivation are likely to continue. A.E. also asserts that reasonable efforts were not made to reunify her with A.L.E.
 

 II
 

 [¶4] Section 27-20-44(1)(c)(1), N.D.C.C., authorizes a juvenile court to terminate parental rights if a "child is a deprived child and the court finds ... [t]he conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm[.]" These elements must be established by clear and convincing evidence.
 
 See
 

 Matter of C.D.G.E.
 
 ,
 
 2017 ND 13
 
 , ¶ 4,
 
 889 N.W.2d 863
 
 . We apply the clearly erroneous standard of review to the juvenile court's findings.
 
 See
 

 Interest of A.B.
 
 ,
 
 2017 ND 178
 
 , ¶ 12,
 
 898 N.W.2d 676
 
 . Under the clearly erroneous standard of review, we affirm the decision of the juvenile court unless it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.
 

 Id.
 

 A
 

 [¶5] A.E. argues the juvenile court erred in finding A.L.E. is deprived. A deprived child is defined in N.D.C.C. § 27-20-02(8)(a) as one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian[.]"
 

 [¶6] Prenatal exposure to any controlled substance is a ground for a finding of deprivation.
 
 See
 
 N.D.C.C. § 27-20-02(8)(f). A.E. used marijuana throughout her pregnancy, and A.L.E. tested positive for marijuana at birth. Deprivation can also be shown if the child is present in an environment of controlled substances and drug paraphernalia.
 
 See
 
 N.D.C.C. § 27-20-02(8)(g). A probation search of A.E.'s home when she was the primary caregiver of A.L.E. resulted in the discovery of methamphetamine, marijuana, and drug paraphernalia. This evidence supports the juvenile court's finding that there was clear and convincing evidence A.L.E. was a deprived child. The juvenile court did not incorrectly apply the law, and we are not left with a definite and firm conviction that a mistake has been made. The court's finding that A.L.E. was a deprived child is not clearly erroneous.
 

 *464
 
 B
 

 [¶7] A.E. argues the juvenile court erred in finding the causes of deprivation are likely to continue, resulting in harm to A.L.E. We have previously noted that a parent's past conduct can form the basis to predict future behavior and a parent's lack of cooperation with social service agencies is evidence that the causes and conditions of deprivation will likely continue.
 
 See
 

 A.B.
 
 ,
 
 2017 ND 178
 
 , ¶ 16,
 
 898 N.W.2d 676
 
 ;
 
 Interest of K.B.
 
 ,
 
 2011 ND 152
 
 , ¶ 12,
 
 801 N.W.2d 416
 
 . Incarceration also may be considered in determining whether the deprivation is likely to continue.
 
 See
 

 Interest of D.H.
 
 ,
 
 2010 ND 103
 
 , ¶ 20,
 
 783 N.W.2d 12
 
 .
 

 [¶8] A.E.'s incarcerations resulted in A.E. being unable to parent A.L.E. for six months. The juvenile court found that A.E. had failed to successfully address her addiction issues as evidenced by her history of relapses and her failure to follow Social Service's recommendations to help manage her addictions. By her own request, A.E. sought an additional twelve months to address her addiction issues-an exceptionally long period of time given A.L.E.'s age and the length of time A.L.E. has already been in foster care. The juvenile court also noted that A.E.'s visits with A.L.E. were largely unproductive because A.E. would either miss them or leave A.L.E. in the care of others. With regard to judicial proceedings, A.E. either failed to attend hearings or was late for the proceedings. Finally, the juvenile court noted that A.L.E. suffers from physical and mental abnormalities which are not being helped by A.E.'s conduct.
 

 [¶9] This evidence supports the juvenile court's finding there was clear and convincing evidence that the causes of the deprivation are likely to continue. The juvenile court did not incorrectly apply the law, and we are not left with a definite and firm conviction that a mistake has been made. The juvenile court's finding that the causes of the deprivation are likely to continue is not clearly erroneous.
 

 C
 

 [¶10] A.E. argues the juvenile court erred in terminating her parental rights because A.L.E. has been placed with a maternal aunt since August 2016.
 
 See
 
 N.D.C.C. § 27-20-20.1(3)(a) (petition "need not be filed" if child is cared for by an approved relative). A.E.'s reliance on N.D.C.C. § 27-20-20.1(3)(a) is misplaced. Section 27-20-20.1(3), N.D.C.C., contains a list of permissive, not mandatory, exceptions to mandatory termination proceedings as provided in N.D.C.C. § 27-20-20.1(2). The juvenile court was not required to dismiss the termination petition because A.L.E. had been cared for by a relative.
 

 [¶11] A.E. argues the district court erred in terminating her parental rights because Social Services failed to use reasonable efforts to reunify the family in violation of N.D.C.C. § 27-20-32.2(2). The juvenile court summarized the efforts made to reunify A.E. with A.L.E. as follows:
 

 Grand Forks County Social Service Center has offered numerous services to the parents, which include the following: Child Protection Services, Foster Care Case Management, Parole and Probation Services in Minnesota and North Dakota, parenting and psychological evaluation referrals, Community Service for random drug screens, parenting classes, transportation assistance, chemical dependency evaluation and subsequent treatment programs, medical services, Health Tracks screenings, visitation service referrals, Kinship Care placement, regular Child and Family Team Meetings, housing referrals to the Family Unification Program,
 
 *465
 
 intensive in-home therapy, and Guardian ad Litem services. Additionally, as a result of the foster care placement, there have been numerous hearings through Juvenile Court in Grand Forks County following the Temporary Custody Order on August 16, 2016. Following the removal of A.L.E., [A.E.] stipulated to deprivation at the Shelter Care Hearing and at trial in 2016. In 2017, both [A.E.] and [A.A.] failed to appear at the Permanency Hearing, and continuing deprivation was found based upon evidence presented.
 

 This evidence supports the juvenile court's finding there was clear and convincing evidence that reasonable efforts have been made to try and reunify A.E. with A.L.E. The juvenile court did not incorrectly apply the law, and we are not left with a definite and firm conviction that a mistake has been made. The juvenile court's finding that reasonable efforts have been made to reunify A.E. with A.L.E. was not clearly erroneous.
 

 [¶12] The juvenile court made extensive findings, correctly applied the law, and determined A.E.'s parental rights should be terminated. We have previously recognized that "[w]hen a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life."
 
 Interest of E.R.
 
 ,
 
 2004 ND 202
 
 , ¶ 9,
 
 688 N.W.2d 384
 
 ;
 
 see also
 

 Interest of M.R.
 
 ,
 
 2015 ND 233
 
 , ¶ 14,
 
 870 N.W.2d 175
 
 . Since A.L.E.'s birth, A.E. has voluntarily and without reasonable justification made herself unavailable to care for and parent A.L.E.
 

 [¶13] The juvenile court's findings that A.L.E. is deprived, that the causes of the deprivation are likely to continue, and that reasonable efforts were made to try and reunify A.E. and A.L.E., are supported by clear and convincing evidence and are not clearly erroneous.
 

 III
 

 [¶14] The judgment is affirmed.
 

 [¶15] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 Gerald W. VandeWalle, C.J.